Reese, J.
delivered the opinion of the court.
In September, 1839, Bailéy & Cochran purchased of Lyon & Stephenson, a league of Texas land, lying on Red river, and on the 5th day of October, 1839, executed under seal, to Lyon & Stephenson, then citizens of the. State of Georgia, Haber-sham county, four bills single, three'of which, were on the 12th of the same month, 7 days after, assigned to defendant, Mark A. Cooper, having upon one of them a credit of $400. It turned out, that the title to said land was spurious and founded upon forgeries. Cooper obtained judgments upon said notes, in Smith county Circuit Court, against the complainants, where they resided.
This bill is filed to enjoin the collection of said judgments, *401 and alledges tbe failure of the consideration, and that the bills single were not assigned to Cooper in the due course of trade, and for a valuable consideration, but as collateral security for advances made by him to Lyon & Stephenson towards the purchase of the same Texas lands of the said Lyon & Stephenson. The defendant in his answer denies this, and asserts, that he advanced two thousand dollars for the notes, and took an assignment, and that he did this on the credit of the makers, for he knew the endorsers to be insolvent.
The deposition of Stephenson is taken in the cause; he testifies,-that on the day the assignment bears date, he and Lyon sold to Cooper the one-half of twenty-two leagues of Texas land lying on Red river, being a part of the same land' sold to Bailey & Cochran, and that towards the payment for the said land, Cooper advanced to them the sum of $2,000, and as collateral security for said advance, Cooper took from them the three notes in controversy, and a note for $500 on John C. Mc-Lemore & Burke, of Nashville, and the title bond for the one-half of a lot of land in Habersham, the whole of which lot was worth $750, and they took from him a bond to return to them those securities at Nacogdoches, in Texas, if the titles to the land turned out to be good, to which place he was to accompany them shortly thereafter, and, when, in the event referred to, he was to pay a further instalment upon the said purchase; that he did accompany them to Texas, where they found the titles to be forgeries; and that after their return to the State of Georgia, they paid him $260, according to the original agreement, as extra interest upon the advance of this $2,000.
This statement is corroborated by the deposition of Mr. Meigs, to whom Cooper transmitted, by mail, the note of Mc-Lemore and Burke for sale or collection. The competency of Stephenson as a witness, has been the main point in the cause here. His competency as relates to his attitude of endorser, a fruitful topic of judicial controversy in England and elsewhere, we regard as having, in Tennessee, and most of the American States, been long settled in favor of the competency of a witness so situated. His competency on the ground of interest, is, perhaps, unassailable; because, if his liability as endorser *402 has been fixed, the contrary of which is not shown, and is not to be presumed, his interest is equal in the case.
His competency as a party to this suit would have presented more difficulty, if there had not been a cross-examination, and one too of the peculiar character which the record exhibits. That cross-examination is by the defendant himself; the interrogatories are pregnant with assertion, statement and narrative. We learn from them, independently of the deposition, that on the day of the assignment, there was a provisional trade for Texas lands, on account of which Cooper was to go, and did go, with Lyon & Stephenson to Texas; that the note on McLemore and Burke, and the title bond for the Habersham lot of land were deposited with Cooper, the interrogatory says, as collateral security to the assignment; that he did receive on their return to Georgia $260, in part for extra interest on the $2,000, a very natural matter, if the $2,000 were advanced for the Texas land, and the notes were collateral; but inexplicable, if the $2,000 were given absolutely for the notes. In short, if the deposition were rejected for incompetency, there is matter enough in rhe interrogatories to sustain the decree, but the cross-examination, and the mode and manner of that cross-examination, remove whatever difficulty, if any, may exist on the subject of Slephenson’s competency. Cooper examines him as to every point of his deposition, and himself by his own interrogatories, brings out from the witness, the additional and conclusive fact, that Cooper had given his bond to Lyon & Stephenson, to restore the securities deposited, in the event the land titles in Texas should prove to be good. This fact, of itself, would be conclusive, that the notes were not absolutely assigned in the course of trade.
When a party, by his cross-examination, brings forward such testimony, he cannot escape from its effects, by objecting to the competency of the witness, as was held by this court in the case of Stump vs. Crutcher's ex'r.
Upon the whole, we are satisfied that the Chancellor’s decree ought to be affirmed.